IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KILLA BEES DISTRIBUTION LLC, dba                    3:23-cv-01629-JR
KILLA BEEZ, an Oregon limited liability
company; KEVIN WONG, an individual,

                                                                     FINDINGS &
                               Plaintiffs,                    RECOMMENDATION

               v.

LEFT COAST FINANCIAL SOLUTIONS,
INC., an Oregon corporation; LEFT COAST
FS HOLDINGS, INC. dba LCFS, an Oregon
corporation; LEFT COAST FS RANCHERIA,
INC., an Oregon corporation; CASEY
ELIZABETH NYE-HERRINGTON; an
individual; DANIEL HERRINGTON; an
individual; NICHOLAS RUPP, an individual;
DOMINIQUE VILLELA, as an individual and
in his capacity as a member, manager, or
employee of SHOT VENTURES, LLC; SHOT
VENTURES, LLC, an Arizona limited liability
company; and DOES 1 through 25,

                               Defendants.

RUSSO, Magistrate Judge:

        Plaintiffs, Killa Bees Distribution LLC and Kevin Wong, bring this action alleging several

claims for relief related to their inability to retrieve funds allegedly placed with defendant Left

Page 1 – FINDINGS & RECOMMENDATION

Coast Financial Solutions, Inc, (LCFS). Defendant Nicholas Rupp successfully sought dismissal

of the clams against him alleged in the Second Amended Complaint and now seeks dismissal with

prejudice of the claims against him in the Third Amended Complaint. For the reasons stated below,

the motion is granted and all claims against him are dismissed with prejudice.

## ALLEGATIONS

Plaintiff Killa Beez is a marijuana product distributor based in Oregon.

Plaintiffs allege LCFS's two principal owners and officers, defendants Casey Elizabeth

Nye-Herrington and Daniel Herrington, informed plaintiff Killa Bees' managing member Kevin

Wong, in February 2022, that defendant LCFS was a licensed, fully operational financial

institution capable of holding and managing funds securely and in compliance with applicable law.

Third Amended Complaint (ECF 93) at ¶ 18. They "provided Mr. Wong with paperwork to "open

an account" on behalf of Killa Beez. Plaintiffs were informed that the company was set up

specifically to serve cannabis businesses in Oregon that could not otherwise access traditional

banking services." Id. at ¶ 19. Plaintiffs assert that in reliance on such representations, they

transferred $126,994.02 into an account controlled by defendant LCFS in February 2022. Id at ¶

21.

Plaintiffs allege:

Defendant Rupp, a co-founder of Defendant Left Coast Financial Solutions,
participated in shaping and disseminating communications and materials used to
attract clients, including Plaintiffs. These communications described Defendant
Left Coast Financial Solutions' deposit services as stable, secure, and compliant
with applicable financial regulations. Defendant Rupp endorsed the availability of
depositor funds on demand and represented that the company maintained adequate
controls and banking relationships.

Id. at ¶ 20.

Plaintiffs assert defendant Rupp maintained active involvement in LCFS's day-to-day

Page 2 – FINDINGS & RECOMMENDATION

affairs and exercised oversight of LCFS's internal policies, client onboarding, account operations, and financial approvals. Id. at ¶ 22. Plaintiff alleges Rupp "was responsible for ensuring compliance, liquidity, and honest communication with depositors." Id.

Plaintiffs allege in September 2022, Killa Beez's minority member Sunnie Hart informed defendants Herrington and Nye-Herrington that Killa Beez would soon make a large withdrawal. Id. at ¶ 23. Plaintiffs allege Killa Beez requested a $30,000 withdrawal on November 2, 2022, and assert "Defendant Left Coast Financial Solutions, from the direct oversight and action of individual Defendants, issued a check, Check No. 14354, in that amount." Id. at ¶ 24.

However, plaintiffs allege, when Wong attempted to deposit the check, it was returned for insufficient funds. Plaintiffs allege the replacement check issued by defendants was also returned for insufficient funds. Id. Plaintiffs assert none of the individual defendants informed them of any LCFS liquidity problems or took corrective action. Id.

Plaintiffs allege that days after the second check was returned, defendants Harring and Nye-Herrington informed them that they were no longer with the company and referred plaintiff Wong to the new CEO, Dominique Villela. Id. at ¶ 25. At about the same time, plaintiffs allege they requested defendant LCFS to issue a check to supplier Eagle Valley Farm in the amount of $20,000 which upon issuance also was returned for insufficient funds. Id. at ¶ 26.

> Plaintiffs assert:
>
> Despite repeated failed withdrawals, Plaintiffs received no accounting, explanation, or resolution. Defendant Rupp remained in a leadership role during this time. He did not disclose the liquidity crisis, initiate returns, or communicate that the company could not honor withdrawals. Instead, the company continued to operate on appearance and allowed depositors to believe their funds remained intact.

Id. at ¶ 27.

Plaintiffs allege that at the time defendant LCFS issued the checks, it was effectively

Page 3 – FINDINGS & RECOMMENDATION

insolvent and

> lacked functioning accounting systems or auditable financial records. Defendant Rupp had access to the corporate bank accounts, financial records, and client onboarding protocols. On information and belief, he knowingly permitted checks to be issued without verifying available funds, allowed client funds to be commingled, and failed to implement basic custodial safeguards.

Id. at ¶ 28.

Plaintiffs allege the State of Oregon suspended defendant LCFS's money transmitter license on January 9, 2023, citing serious violations including failure to maintain audited financial statements and to notify regulators of changes in corporate control. Plaintiffs allege defendant Rupp was part of the leadership team during this period and "bore responsibility for the company's compliance posture." Id. at ¶ 29.

> Plaintiffs assert:

> Defendant Rupp never informed Plaintiffs of the license suspension or the impact it would have on their funds, one of which included being effectively "cut-off" from the accounts into which the funds had been deposited. To date, Defendants have not returned Plaintiffs' funds, and Defendants have failed to Plaintiffs' concerns. Instead, Defendant Rupp and Defendant Left Coast Financial Solutions ceased all communication with Plaintiffs remained unaware of the regulatory shutdown. However, upon information and belief, Defendant Rupp and Defendant Left Coast Financial Solutions prioritized the return of funds to one particular investor over all others, including Plaintiffs, demonstrating favoritism, lack of appropriate protocol in dealing with their insolvency, and fraud.

Id. at ¶ 30.

Plaintiffs allege that on December 12, 2023, defendants Herrington and Nye-Herrington entered into a Consent Order with the Oregon Department of Consumer and Business Services which imposed a permanent industry bar and confirmed defendant LCFS had failed to maintain audited statements and violated reporting requirements under Oregon law. Id. at ¶ 31. Nonetheless, plaintiffs assert defendant Rupp remained in a leadership role but failed to notify depositors, implement a restitution plan, or ensure a proper accounting. Id.

Plaintiffs allege defendant LCFS engaged in reckless practices "while defendant Rupp was actively involved in operations and compliance oversight." Id. at ¶ 33. Plaintiffs assert defendant Rupp "as co-founder and managing officer, was uniquely positioned to prevent the losses[, and] failed to do so." Id. at ¶ 34.

Plaintiffs allege claims against defendant Rupp for: (1) breach of contract "under veil-piercing"; (2) Breach of the covenant of good faith and fair dealing "under veil-piercing"; (3) unjust enrichment; (4) negligence; (5) fraudulent misrepresentation; (6) dishonored check; (7) conversion; (8) civil RICO; (9) RICO conspiracy; and (10) breach of fiduciary duties.

## DISCUSSION

As noted above, defendant Rupp moves to dismiss all claims against him.

## A.    Breach of Contract

To state a claim for breach of contract, plaintiffs must allege (1) the existence of a contract, (2) its relevant terms, (3) plaintiff's full performance and lack of breach, and (4) defendant's breach resulting in damage to plaintiff. Moyer v. Columbia State Bank, 316 Or. App. 393, 402, 505 P.3d 26, 33 (2021).

Plaintiffs allege they:

> entered into an agreement with Defendants Left Coast Financial Solutions under which Defendants agreed to receive, hold, and transmit Plaintiffs' business funds in accordance with applicable law and ordinary commercial standards.
> Defendants Nye-Herrington and Herrington personally participated in soliciting Plaintiffs' deposits, explaining account features, managing disbursements, and representing that funds would be held securely and returned upon demand. Through these actions, the Herringtons either became parties to or assumed performance obligations under the contract.
> The agreement, whether oral, written, or formed through the parties' course of dealing, contained material terms: Plaintiffs' funds would be safeguarded, not commingled or misused, and available upon request.

Third Amended Complaint (ECF 93) at ¶¶ 36-38.

Page 5 – FINDINGS & RECOMMENDATION

Plaintiffs allege they fully performed their obligation by depositing $126,994.02 with defendants but that defendants breached the contract by issuing checks with insufficient funds, failing to safeguard plaintiffs' money, operating without internal controls or adequate financial capacity, withholding funds, and failing to disclose LCFS insolvency and regulatory collapse, resulting in the loss of plaintiffs' funds. Id. at ¶ 39-41.

As to defendant Rupp, plaintiffs allege:

> During the operative period, Defendant Rupp controlled or jointly managed Left Coast Financial Solutions alongside the Herringtons, including the solicitation of funds, administration of deposits, and authorization of disbursements. Defendant Rupp was not a passive shareholder, but an executive actor in both business development and financial oversight.
>    Defendant Left Coast Financial Solutions was undercapitalized, ignored corporate formalities, and operated as a single financial entity. They lacked separate books, functional roles, or transparency. Defendant Rupp used these entities as shells to facilitate and conceal misconduct while avoiding personal accountability.
>    Because Defendant Rupp exercised complete control over Defendant Left Coast Financial Solutions and directly benefitted from the contract while shielding himself behind a corporate structure, the corporate veil should be pierced to impose liability upon him personally.

Id. at ¶¶ 42-44.

In the Second Amended Complaint, regarding the timing of Rupp's involvement with LCFS regulatory compliance following the Herringtons' alleged mismanagement, plaintiffs alleged: "Defendant Villela and Defendant Rupp stepped into positions as board members of Defendant Left Coast Financial Solutions to bring it back into compliance with the licensing authorities and return Plaintiffs' deposits." Second Amended Complaint (ECF 13) at ¶ 91.[1]

---

[1] An amended complaint may only allege other facts consistent with the challenged pleading. Reddy v. Litton Indus., Inc., 912 F.2d 291, 297 (9th Cir. 1990). To the extent plaintiffs omit this allegation from the third amended complaint in an attempt to imply defendant Rupp had greater involvement at the time of the contract or when LCFS issued the insufficient funds checks and before the regulatory issues with the State, such allegations are inconsistent with the previous allegations. Therefore, the Court declines to draw such inferences or assume the truth of allegations directly contrary to the previous allegations on the timing of Rupp's duties with respect to regulatory compliance. A statement in a complaint, answer, or pretrial order is a judicial admission, as is a failure in an answer to deny an allegation. Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988). Although plaintiffs were granted leave to amend, they were not granted such leave to contradict facts pleaded but, rather, to add facts

Page 6 – FINDINGS & RECOMMENDATION

Plaintiffs do not allege the existence of a contract between themselves and defendant Rupp. As the Court has previously noted when dismissing the breach of contract claim against Rupp alleged in the Second Amended Compliant, an officer of a corporation who acts within the scope of his authority, discloses his representative capacity to the other party, and makes a contract in the corporation's name is not liable for its breach. Kahn v. Weldin, 60 Or. App. 365, 377, 653 P.2d 1268, 1275 (1982).

Plaintiffs now suggest that Rupp "dominated" LCFS and misused its form to commit wrongdoing to allege personal liability based on a vail piercing theory. Response (ECF 98) at p. 11. In order to succeed on that theory of liability, the plaintiff must show that (1) the individual had actual control of the corporation; (2) the individual used their control of the corporation to engage in improper conduct; and (3) the plaintiff was harmed as a result of that improper conduct. Greenleaf Auto Repair, LLC v. Ideal Auto Works, LLC, 318 Or. App. 865, 867, 509 P.3d 750, 752 (2022).

To show control, plaintiff must allege Rupp actually controlled the corporation. Oregon Pub. Employees' Ret. Bd. ex rel. Oregon Pub. Employees' Ret. Fund v. Simat, Helliesen & Eichner, 191 Or. App. 408, 431, 83 P.3d 350, 363 (2004). Plaintiffs allege the Herringtons were the "principals" of LCFS. See Third Amended Complaint (ECF 93) at ¶ 18 ("Around February 2022, Plaintiffs were introduced to Defendant Left Coast Financial Solutions through its principals, Defendants Casey Elizabeth Nye-Herrington and Daniel Herrington."). There are no specific factual allegations of Rupps' involvement in the forming of the contract or his control of LCFS at the time of contract formations and as noted, plaintiffs have previously alleged Rupp did not step

---

that would cure the prior deficiencies in the operative complaint. Specifically, regarding a lack of plausible factual material to state a cause of action against defendant Rupp. Plaintiffs do not provide any suggestion that the prior allegations were based on a good faith mistake.

into his alleged position as a board member of LCFS until after the alleged contract formation and breach. Plaintiffs allege Rupp shaped and disseminated materials used to attract clients but do not provide any facts as to what specific materials from Rupp plaintiffs relied on in entering into the contract. Indeed, as noted, the complaint only alleges plaintiffs communicated with the Herringtons.

The Consent Order plaintiffs' reference in the Third Amended Complaint states that the Herringtons formed LCFS in May 2016 with defendant Herrington serving as president, chief operating officer, and "sole director." The Order further notes defendant Nye-Herrington became chief executive officer of the company and defendant Herrington became chief operations officer. They held those positions and otherwise served as directors and control persons of Left Coast Financial Solutions until November 2022.[2] Consent Order (https://dfr.oregon.gov/AdminOrders/Herrington%20Consent%20Order%20SIGG.pdf) at ¶ 2. Moreover, the Order demonstrates that it was not until "November 2022, Left Coast Financial Solutions underwent changes to its ownership, including its board of directors, officers, and stockholders." Id. at ¶ 12.

Plaintiffs specifically allege that defendant Herrington authorized issuance of the alleged insufficient funds checks in November 2022. Third Amended Complaint (ECF 93) at ¶ 117. Plaintiffs do not allege any concrete facts regarding Rupp's involvement in the issuance of the checks, contract formation, or control of LCFS.

Plaintiffs allege:

On information and belief, Defendant Rupp oversaw account operations, reviewed internal financial reports, and was aware that client funds, including Plaintiffs' funds, had been depleted or were otherwise unavailable. Despite this knowledge,

___
[2] Plaintiffs incorporate the Consent Order in the Complaint and the Court has previously taken judicial notice of the Order.

Defendant Rupp permitted the continued solicitation and retention of client funds and failed to take any steps to disclose the company's regulatory status or inability to honor disbursement requests.

Id. at ¶ 118. Such allegations amount to mere conclusory allegations based on speculation at the time of the alleged contract formation and alleged breach. The information and belief allegations are not appropriate in this instance. See Gonzalez v. Fallanghina, LLC, 2016 WL 3951655, at *5 (N.D. Cal. July 22, 2016) (allegations made "upon information and belief" are appropriate where (1) the support for the claims turns on information particularly within the control of the defendant, or (2) where there is other factual information elsewhere in the complaint upon which the allegations are based).

The allegations along with the incorporated Consent Orders place control of LCFS in the hands of the Herringtons and not Rupp. The complaint does not plausibly allege control by Rupp for purposes of the breach of contract claim. The veil piercing claim fails for this reason.

With respect to improper conduct, a plaintiff seeking to hold a corporation's shareholder personally liable for a corporate debt must allege the plaintiff's inability to collect from the corporation is the result of the shareholder's improper conduct. Handam v. Wilsonville Holiday Partners, LLC, 221 Or. App. 493, 496, 190 P.3d 480, 483 (2008).[3]

Plaintiffs allege:

Upon information and belief, Defendant Rupp, one of the original founders of the enterprise, was materially involved in both strategic planning and day-to-day operations throughout the relevant period. He failed to take any steps to safeguard depositor funds, knowingly allowed unlawful and deceptive practices to continue, and personally benefitted from the misuse of investor deposits.

Third Amended Complaint (ECF 93) at ¶ 5.

---

[3] Plaintiffs do not allege Rupp is a shareholder in LCFS and Rupp asserts he never had an ownership interest in LCFS.

Page 9 – FINDINGS & RECOMMENDATION

As noted above, plaintiffs fail to plausibly allege Rupp was involved in the contract formation. Nonetheless, while the improper conduct may relate to plaintiffs' entering into the transaction, it may also relate to preventing or interfering with the corporation's performance or ability to perform its obligations toward the plaintiff. Id.

The allegations regarding improper conduct involve: (1) issuance of the insufficient fund checks, Third Amended Complaint (ECF 93) at ¶¶ 24-26, 52; (2) failure to disclose loss of money transmitter license and insolvency, id. at ¶¶ 27-30; and (3) prioritized repayment to investors and commingled funds, id. at ¶¶ 30, 32. As noted above, plaintiffs fail to plausibly allege Rupp's involvement with the issuance of the insufficient funds checks or regulatory compliance at the time of the alleged harm. Accordingly, plaintiffs do not plausibly allege Rupp issued insufficient funds checks or that he failed to disclose required information prior to plaintiffs' inability to receive the funds. As to prioritizing payment to investors, assuming this constitutes improper conduct, plaintiffs again allege based on "information and belief". Id. at ¶ 30 ("upon information and belief, Defendant Rupp and Defendant Left Coast Financial Solutions prioritized the return of funds to one particular investor over all others, including Plaintiffs"). Plaintiffs do not allege the timing of this purported prioritization and thus the complaint fails to plausibly allege Rupp engaged in this conduct to the detriment of plaintiffs given that the insufficient funds checks were issued when LCFS was under the Herringtons' control.[4]

---

[4] The Consent Order further erodes any plausibility to the harm resulting from Rupp's purported improper conduct noting:

For a time, [the Herringtons], through Left Coast Financial Solutions, employed a chief financial officer who created and maintained the company's financial records. Following that individual's death in or about November 2021, [the Herringtons] did not replace him nor did [they] undertake to do their own proper financial recordkeeping for the company.

Under Respondents' management, Left Coast Financial Solutions had dozens of clients and hundreds of thousands of dollars going in and out of the company's bank accounts every month.

The company maintained two accounts with its bank, one primarily to receive deposits and the other to disburse payments to its clients' vendors, employees, and other individuals and entities to whom the client's owed money. [The Herringtons] allowed the company to make disbursements at the direction of their clients. Following

Page 10 – FINDINGS & RECOMMENDATION

Plaintiffs fail to plausibly allege Rupp used any control over the corporation to engage in improper conduct resulting in harm to the plaintiffs. At best, the complaint alleges he prioritized returning money to some unnamed investors over depositors after plaintiffs suffered the economic impact of the breach. The complaint does not plausibly tie the insufficient funds checks to Rupp through any improper conduct made possible by control over LCFS at the time. Accordingly, plaintiffs' fail to plausible allege liability for breach of contract based on a veil piercing theory. The motion to dismiss the claim is granted.

B.    Breach of the Implied Covenant of Good Faith and Fair Dealing

In general, every contract has an obligation of good faith in its performance and enforcement under the common law. Klamath Off-Project Water Users, Inc. v. Pacificorp, 237 Or. App. 434, 445, 240 P.3d 94, 101 (2010). As noted above, defendant Rupp is not a party to the contract LCFS allegedly violated. The motion to dismiss plaintiffs' breach of the implied covenant of good faith and fair dealing is granted.

C.    Unjust Enrichment

To allege an unjust enrichment claim, plaintiffs must plead: (1) a benefit conferred on the defendants by the plaintiffs; (2) the defendants' awareness of the benefit; and (3) under the circumstances, it would be unjust for the defendants to retain the benefit without compensating the plaintiffs. Grimstad v. Knudsen, 283 Or. App. 28, 42, 386 P.3d 649, 657 (2016).

---

the death of the former chief financial officer, [the Herringtons] did not maintain any appropriate bookkeeping records, including any ledger identifying or segregating money coming in and money going out by each client. Instead, [The Herringtson] attempted to keep track of funds in their heads, which proved to be an impossible task. Disbursements were made without verifying whether clients had enough money associated to their accounts. [The Herringtson] used money deposited by some clients to pay the debts of other clients.
       As a result of the significant banking fees, employee costs, and other overhead, coupled with a lack of proper bookkeeping, [the Herringtson] caused Left Coast Financial Solutions to experience significant financial troubles. This included, among other things, overdrawn accounts, checks returned for insufficient funds, and the like. Many of the company's clients lost their deposits and have been unable to access their money. https://dfr.oregon.gov/AdminOrders/Herrington%20Consent%20Order%20SIGG.pdf at ¶ 6-9.

Plaintiffs allege:

> Defendants received and retained the benefit of these funds. The deposits were used to support the operations of Defendant Left Coast Financial Solutions, pay vendors, or settle other liabilities, without Plaintiffs' knowledge or consent and without returning any portion of the funds.
>
> Defendants Nye-Herrington and Herrington personally participated in accepting and managing the deposits. They used these funds as part of Defendant Left Coast Financial Solutions' general pool of assets and authorized disbursements without ensuring that Plaintiffs' money remained available or protected.
>
> Defendant Rupp also received and retained a benefit from Plaintiffs' deposits. He exercised control over Defendant Left Coast Financial Solutions' accounts, authorized or failed to stop the use of funds, and continued to operate the business while concealing the company's insolvency. Defendant Rupp's failure to return the funds, or even communicate the loss, allowed him and the company to retain an undeserved financial advantage.

Third Amended Complaint (ECF 93)at ¶¶ 59-61.

The allegations do nothing more than establish defendant LCFS received the benefit of plaintiffs' funds and does not plausibly allege Rupp personally benefited from the alleged misappropriation of funds. Plaintiffs assert a defendant gains institutional, reputational, or strategic advantage at another's expense by knowingly allowing funds to be diverted and fails to rectify the misuse. However, the complaint is devoid of plausible factual allegations establishing that Rupp gained an advantage as an alleged nonowner director of LCFS. Even assuming this is true he exercised some oversight at the time the funds were misappropriated and thus unavailable when plaintiff requested the issuance of the insufficient fund checks. Moreover, as alleged in the Third Amended Complaint and as established by the incorporated Consent Orders, LCFS suffered loss of its money transmitter license shortly after issuance of the NSF checks at the time plaintiffs previously alleged Rupp stepped into a position as a board member to bring it back into compliance with the licensing authorities and return plaintiffs' deposits. Thus, any allegations that Rupp gained some sort of strategic advantage is not only implausible, but contradictory of the nascent record in this case as established by the pleadings.

Page 12 – FINDINGS & RECOMMENDATION

D.    Negligence

While a person whose negligent conduct unreasonably creates a foreseeable risk of harm

and actually causes that harm is liable to those injured, no such claim may be made for purely

economic losses absent a special relationship. Harris v. Suniga, 344 Or. 301, 305, 180 P.3d 12, 14

(2008).

Plaintiffs allege:

> Defendant Rupp also owed a duty of care. He co-founded Defendant Left
> Coast Financial Solutions, participated in its financial and operational management,
> and maintained control over its accounts, decision-making, and compliance
> infrastructure. He had authority to intervene in the mishandling of funds but failed
> to do so.
> Defendants breached their duties by:
> a. Failing to establish or enforce basic accounting controls;
> b. Allowing disbursements from accounts with insufficient funds;
> c. Commingling client assets with operating expenses or unrelated
> liabilities;
> d. Continuing to solicit and retain deposits despite knowing the company
> was insolvent or suspended;
> e. Withholding information and regulatory actions, financial collapse, and
> nonperformance.

Third Amended Complaint (ECF 93)at ¶¶ 69-70.

Plaintiffs continue to fail to allege a special relationship between them and Rupp. See

Stevens v. First Interstate Bank of California, 167 Or. App. 280, 288, 999 P.2d 551, 555 (2000)

(relationship between bank and depositor is that of debtor and creditor and the contract between

the parties is purely legal and has no element of trust in it).

Plaintiffs assert the allegations establish Rupp had a "duty deeply rooted in [his]

assumption of discretionary authority and fiduciary control over their funds, separate and apart

from the contractual terms." Response (ECF 98) at p. 21. However, plaintiffs offer no plausible

allegation that they even knew they were entering into any relationship with Rupp when they

deposited the funds, much less some sort of discretionary investment management. The allegations

Page 13 – FINDINGS & RECOMMENDATION

do nothing more than allege an ordinary depositor/banker relationship. The allegations do not plausibly establish that plaintiffs entrusted Rupp to act on their behalf, only that they deposited funds with LCFS to enable them to write checks to those with whom they wished to do business. See Conway v. Pac. Univ., 324 Or. 231, 241, 924 P.2d 818, 824 (1996) (heightened duty arises where "one party has relinquished control over the subject matter of the relationship to the other party and has placed its potential monetary liability in the other's hands. In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf…"). At best, plaintiffs allege Rupp had a special relationship with defendant LCFS to exercise discretion in a nonnegligent manner in ensuring the business established adequate controls, separation of client funds, etc. and not that such relationship existed between plaintiffs and Rupp. Plaintiffs simply do not allege they engaged Rupp to exercise independent judgment on their behalf. The motion to dismiss this claim is granted.

E.    Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation plaintiffs must allege a misrepresentation, justifiable reliance on that misrepresentation, and damages. Cocchiara v. Lithia Motors, Inc., 353 Or. 282, 296–97, 297 P.3d 1277, 1286 (2013). For a statement to qualify as a misrepresentation, at least one of the following two things must be true: the person who makes the statement must have knowledge of its falsity, or awareness of lack of knowledge as to its truth or falsity. Gibson v. Bankofier, 275 Or. App. 257, 270, 365 P.3d 568, 579 (2015).

Plaintiffs allege:

> Through their officers, directors, and representatives, including Defendants Casey Nye-Herrington, Daniel Herrington, and Nicholas Rupp, Defendant Left Coast Financial Solutions made repeated false and misleading representations to Plaintiffs regarding the nature, security, and functionality of their financial services. These representations included, but were not limited to:
> a. That Defendant Left Coast Financial Solutions maintained functioning,

Page 14 – FINDINGS & RECOMMENDATION

regulated financial services;

b. That deposited funds would be held securely, segregated, and returned upon request;

c. That withdrawals could be processed via check or other means without restriction;

d. That Defendant Left Coast Financial Solutions was in full regulatory compliance and maintained active licenses;

e. That Plaintiffs' funds remained safely within their account balance.

f. Following the Herrington's departure, omissions by Defendant Rupp and Defendant Left Coast Financial Solutions relating to repayment of a certain client or clients in priority over others such as Plaintiff. (only as to Defendant Left Coast Financial Solutions and Defendant Rupp).

Each of these representations was false at the time it was made. Defendants knew that Defendant Left Coast Financial Solutions was insolvent, under regulatory scrutiny, and unable to meet depositor obligations. They had direct access to financial accounts, internal communications, and regulatory notices confirming that the company lacked sufficient funds, operated without meaningful accounting controls, and was facing imminent shutdown. Despite this knowledge, Defendants continued to present Defendant Left Coast Financial Solutions as solvent, compliant, and capable of honoring client withdrawals.

Defendants made these misrepresentations and omissions knowingly and with intent to deceive. They understood that Plaintiffs would rely on their statements in deciding whether to deposit and retain funds with Defendant Left Coast Financial Solutions. Their goal was to induce continued reliance and avoid a mass withdrawal of client funds that would expose the company's collapse.

…

Defendants made these statements knowing that Plaintiffs would rely on them and intending that Plaintiffs would take action based on their assurances. Plaintiffs in fact relied on these representations by depositing funds, refraining from withdrawing them, and continuing to interact with Defendant Left Coast Financial Solutions under the belief that their money was secure and available.

Defendant Rupp actively participated in the development and delivery of the false representations. He knew that Defendant Left Coast Financial Solutions' financial accounts were depleted, that checks were bouncing, and that the company had lost its license to operate. Defendant Rupp reviewed internal reports, maintained oversight of finances, and was directly informed of regulatory findings. He nonetheless permitted Defendant Left Coast Financial Solutions to continue soliciting deposits and falsely represented that accounts remained viable.

Third Amended Complaint (ECF 93)at ¶ 79-81, 85-86.

Under Fed. R. Civ. P. 9(b), allegations sounding in fraud must be plead with particularity.

The Rule does not allow plaintiffs to lump multiple defendants together but requires them to differentiate their allegations when suing more than one defendant. Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011).

The complaint is deficient regarding what misrepresentation defendant Rupp made, when or where it was made, or how it was made. To the extent plaintiffs assert fraudulent omissions, plaintiffs had already engaged in the detrimental reliance. Specifically, depositing funds before the statements alleged material omissions, i.e., after the investigation into Herrington and Nye-Herrington's conduct. Plaintiffs had already attempted to make withdrawals before Rupp stepped into his position as a LCFS board member to bring it back into compliance with the licensing authorities and return plaintiffs' deposits. Accordingly, plaintiffs could not have relied on such omissions and suffered damage even assuming an obligation to make such statements. The Third Amended Complaint continue to fail to allege, with particularity, what Rupp did or failed to do in inducing them to deposit their funds and leave those funds until the early November 2022 attempts to withdraw funds. The motion to dismiss this claim is granted.

F.    Dishonored Check

Plaintiffs seek to recover for two dishonored checks pursuant to Or. Rev. Stat. § 30.701 which permits recovery by the payee against a maker of the dishonored check. Defendant Rupp was not the alleged maker of the checks and plaintiffs fails to allege who specifically signed the checks in this iteration of the claim despite previously alleging defendants LCFS, Herrington, and Nye-Herrington issued the checks.[5]   There is no plausible allegation suggesting Rupp was the maker of any of the dishonored checks. See Or. Rev. Stat. § 73.0103(1)(d) (""Maker" means a

---

[5] Indeed, in the Eighth Cause of action, plaintiffs allege, " On information and belief, in or around November 2022, Defendant Daniel Herrington authorized or issued two checks totaling $50,000 ($30,000 to Plaintiff Killa Bees and $20,000 to Eagle Valley Farm)." Third Amended Complaint (ECF 93) at ¶ 117.

person who signs or is identified in a note as a person undertaking to pay."). In addition, as to the

check made payable to Eagle Valley Farm, plaintiffs are not the payee and may not bring this cause

of action for this alleged dishonored check.[6] The motion to dismiss this claim is granted.

G.    Conversion

Conversion is an "intentional exercise of dominion or control over a chattel which so

seriously interferes with the right of another to control it that the actor may justly be required to

pay the other the full value of the chattel. Morrow v. First Interstate Bank of Oregon, N.A., 118

Or. App. 164, 171, 847 P.2d 411, 415 (1993).

Plaintiffs now allege "Defendant Rupp likewise exercised authority over Defendant Left

Coast Financial Solutions' accounts and financial operations and knowingly permitted the

conversion of Plaintiffs' funds." Third Amended Complaint (ECF 93) at ¶ 107. However, as noted

above, in footnote 1, plaintiffs' attempts to omit allegations to imply defendant Rupp had greater

involvement at the time of the contract or when LCFS issued the insufficient funds checks before

the Herringtons left LCFS and before the regulatory issues with the State, are improper attempts

to contradict prior allegations without a good faith basis for doing so. Moreover, as also noted

above, the Consent Orders plaintiffs' reference in the Third Amended Complaint establish that the

Herringtons formed LCFS in May 2016 with the Herringtons serving as officers, and defendant

Daniel Herrington serving as the sole director. The Order further notes the Herringtons served as

officers and otherwise served as directors and control persons of Left Coast Financial Solutions

---

[6] Or. Rev. Stat. § 30.702(2) also requires the payee to make a written demand not less than 30 days before commencing an action for dishonored check. Plaintiffs allege:

> On January 3, 2023, Plaintiffs, through counsel, sent a written demand to Dominique Villela, and Defendants Daniel Herrington, Casey Nye-Herrington, and Left Coast Financial Solutions, demanding payment of the dishonored checks and return of plaintiffs' deposited funds. The letter specifically identified the dishonored checks by date and amount and warned that legal action would follow if payment was not made.

Third Amended Complaint (ECF 93) at ¶ 97. Plaintiffs do not allege such notice was provided to Rupp.

until November 2022. Again, the Order demonstrates that it was not until "November 2022, Left

Coast Financial Solutions underwent changes to its ownership, including its board of directors,

officers, and stockholders." Id. at ¶ 12. Accordingly, it is simply not plausible that defendant Rupp

exercised control over the funds deposited by plaintiffs at the time of deposit or at the time of the

dishonored checks. Thus, plaintiffs fail to allege a plausible claim for relief based on conversion

and the motion to dismiss this claim is granted.

H.     RICO

Just as with the fraud claim, plaintiffs' RICO claim must be alleged with particularity.[7] As

noted above, the complaint still lacks the specifics regarding Rupp's activity. See Third Amended

Complaint (ECF 93) at ¶ 118 ("On information and belief, Defendant Rupp oversaw account

operations, reviewed internal financial reports, and was aware that client funds, including

Plaintiffs' funds, had been depleted or were otherwise unavailable. Despite this knowledge,

Defendant Rupp permitted the continued solicitation and retention of client funds and failed to

take any steps to disclose the company's regulatory status or inability to honor disbursement

requests."). In addition, the allegations against Rupp do nothing to plausibly connect him to any

purported use of the wires or mails to commit the fraud alleged in paragraph 115 of the Third

Amended Complaint. As noted above, Fed. R. Civ. P 9(b) does not allow a complaint to lump

multiple defendants together but requires plaintiffs to differentiate their allegations when suing

more than one defendant. Destfino, 630 F.3d at 958. Accordingly, the motion to dismiss the RICO

and RICO conspiracy claims is claim is granted.

---

[7] RICO is focused on long-term criminal conduct, not on sporadic activity or on garden-variety tort or contract
claims. Misson v. Robles, 2022 WL 17225938, at *3 (N.D. Cal. Nov. 25, 2022). Accordingly, this Court generally
requires even greater specificity than that required by Fed. R. Civ. P. 9(b) in the form of a RICO case statement. See,
e.g., Underwood v. 1450 SE Orient, LLC, Case No. 3:18-1366-JR Order dated January 28, 2019 (ECF 366).

I.    Breach of Fiduciary Duties

As noted above, defendant Rupp did not owe plaintiffs any fiduciary duties. See Conway, 324 Or. at 241, 924 P.2d at 824 (heightened duty arises where "one party has relinquished control over the subject matter of the relationship to the other party and has placed its potential monetary liability in the other's hands. In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf…"). Plaintiffs do not allege a fiduciary relationship between themselves and defendant Rupp therefore the motion to dismiss this claim is granted.

CONCLUSION

Defendant Rupp's motion to dismiss (ECF 95) should be granted and all claims against defendant Rupp should be dismissed. Plaintffs have now attempted to allege the claims against Rupp four times and have had the benefit of the Court's guidance prior to the filing of the Third Amended Complaint. It is now clear plaintffs can allege no set of facts that would plausibly allege any of the causes of action against defendant Rupp. Accordingly, the claims should be dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo

consideration of the factual issues and will constitute a waiver of a party's right to appellate review

of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 14th day of October, 2025.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge